Filed 8/29/23  P. v. Simental CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CARLOS ARMANDO SIMENTAL,<br><br>    Defendant and Appellant. | G061471<br><br>(Super. Ct. No. 11NF2782)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Michael J. Cassidy, Judge.  Reversed and remanded.

Jason L. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, A. Natasha Cortina, Warren Williams and Lynne G. McGinnis, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Carlos Armando Simental was convicted of multiple offenses based on his participation in an in-home robbery and sentenced to life plus 34 years. In Simental's first appeal, a prior panel of this court reversed one of his convictions and remanded for further proceedings on that count. The panel also directed the trial court to stay the sentence on another count under Penal Code section 654 and to comply with section 1170.91 at Simental's resentencing hearing.[1] (*People v. Perez et al.* (Oct. 20, 2020, G056047) [nonpub. opn.] (*Perez I*).) On remand, in June 2022, the trial court resentenced Simental, this time imposing a life sentence plus 10 years.

Simental raises two contentions in this appeal from the judgment entered following remand and resentencing. First, he contends the trial court erred by not applying the amendment to section 1385 that went into effect on January 1, 2022. (Stats. 2021, ch. 721, § 1.) With this amendment to section 1385, the Legislature sought to provide guidance to trial courts on the exercise of their discretion to dismiss sentence enhancements. "[S]ection 1385 now provides that the presence of one of nine enumerated 'mitigating circumstances' 'weighs greatly in favor of dismissing the enhancement . . . unless the court finds that dismissal of the enhancement would endanger public safety.'" (*People v. Walker* (2022) 86 Cal.App.5th 386, 391, review granted March 22, 2023, S278309 (*Walker*).) At Simental's resentencing, the court and the parties were focused on complying with the remittitur issued in *Perez I* and it appears the presence of two mitigating circumstances under section 1385, subdivision (c)(2) were overlooked. Because the record is ambiguous as to whether the trial court made an informed sentencing decision to not dismiss one or more of Simental's firearm enhancements under amended section 1385, we must remand for resentencing again.

Simental's second contention is the amended abstract of judgment prepared after his resentencing must be corrected to reflect the nature of his kidnapping conviction.

---

[1] Further statutory references are to the Penal Code unless otherwise stated.

We agree and direct the trial court to ensure the amended abstract of judgment prepared after this resentencing accurately reflects the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.

### FACTUAL BACKGROUND[2]

Simental along with Cristian Perez, Ivan Valenzuela Perez, and Oscar Valenzuela broke into an Anaheim home in the middle of the night in September 2011, believing F.M., who lived in the house with his family, had a stash of drugs and money.[3] Simental and the Valenzuela brothers were armed with AR-15 rifles. They forced members of F.M.'s family, including his two young daughters and his sister, into the master bedroom with F.M. and his wife. They bound the adults with zip ties and Simental ushered the children (B.M. and her sister) into the bedroom closet. Ivan demanded F.M. give them his money and drugs. After F.M. gave them about four pounds of methamphetamine, Ivan demanded F.M. give them the rest of his drugs. When he did not immediately do so, he was beaten and stabbed, and his family was threatened.

Eventually, F.M. told them he had cocaine hidden in a truck parked in his driveway. The Valenzuela brothers escorted F.M. outside and pulled the truck into the garage, where they forced him to retrieve the hidden cocaine. While the Valenzuela

---

[2] Because Simental's appellate contentions do not require a full recitation of the facts, we provide a short summary, which is taken from the unpublished opinion in *Perez I, supra*, G056047 at pages 5–9. We granted Simental's unopposed request for judicial notice of the appellate record in his prior appeal in case No. G056047. (Evid. Code, §§ 452, subd. (d)(1), 459.)

[3] Ivan Valenzuela Perez and Oscar Valenzuela are brothers. We refer to them jointly as the Valenzuela brothers and individually by their first names to avoid confusion; we intend no disrespect.

brothers were in the garage with F.M., Simental replaced one of the victim's zip ties because she said it was too tight. He also checked on the children in the closet and assured the women and children it was going to be okay and no one was going to die. When the Valenzuela brothers returned from the garage with F.M., the torment continued. Demanding more drugs from F.M., Ivan continued to beat F.M., cut both of F.M.'s ears, and threatened his family. Finally convinced F.M. had nothing more to give them, they decided to leave. They fled on foot when they saw a police car outside, and Simental was apprehended later that day. (*Perez I, supra*, G056047 at pp. 5–9.)

## II.

### SIMENTAL'S CONVICTIONS AND INITIAL SENTENCE

In 2015, Simental was convicted of the following offenses: kidnapping F.M. to commit robbery (§ 209, subd. (b)(1) (count 4)); first degree robbery in concert (§§ 211, 212.5, subd. (a), 213, subd. (a)(1)(A) (count 5)); kidnapping B.M. (§ 207, subd. (a) (count 6)); two counts of making criminal threats (§ 422 (counts 7 & 8)); and first degree residential burglary (§§ 459, 460, subd. (a) (count 9)).[4] The jury found Simental personally used a firearm in each offense. (§§ 12022.53, subd. (b) (counts 4–6); 12022.5, subd. (a) (counts 7–9).)

Simental received a life sentence for his kidnapping to commit robbery conviction (count 4) plus 10 years for the firearm enhancement on this count. The trial court imposed a consecutive nine-year term for the robbery conviction (count 5) plus 10 years for its firearm enhancement. The court imposed a consecutive sentence of one year and eight months for the kidnapping of B.M. conviction (count 6) plus three years and four months for the firearm enhancement on this count. The court ordered the sentences

---

[4] Simental was also convicted of three counts of kidnapping for extortion (§ 209, subd. (a) (counts 1–3)), but the trial court, in granting Simental's motion for a new trial, set aside the guilty verdicts on these counts and dismissed them and their attending firearm enhancements.

on the remaining counts to be served concurrently, imposing three-year upper terms for the criminal threat convictions (counts 7 & 8), a six-year upper term for the burglary conviction, and a 10-year firearm enhancement on each. In total, the trial court imposed a life sentence plus an aggregate determinate term of 34 years.

## III.

### PRIOR APPEAL

Simental and his codefendants appealed from the judgment. In *Perez I*, a prior panel of this court reversed the kidnapping convictions in count 6 for instructional error and remanded for the prosecution to retry the charge if it chose to do so and if not, for the court to resentence the defendants. (*Perez I, supra*, G056047 at pp. 35–40, 55.) The panel directed the trial court to stay the defendants' sentences for robbery (count 5) under section 654 and to consider the application of section 1170.91 as to Simental at the resentencing hearing. (*Perez I,* at pp. 47–48, 52–56.) The trial court was also directed to correct clerical errors in Perez's abstract of judgment, including to accurately state the nature of his conviction in count 4 as "kidnapping to commit robbery." (*Id.* at p. 55.)

## IV.

### THE RESENTENCING

Upon remand, the prosecution elected not to retry count 6 and the trial court dismissed the charge. Simental filed a sentencing brief, arguing the trial court should consider his military service-connected disability of post-traumatic stress disorder (PTSD) under section 1170.91 when resentencing him on the counts with determinate terms.[5] He further asserted application of section 1170.91 to the determinate terms did

---

[5] Section 1170.91, subdivision (a), directs a trial court to consider a military veteran's trauma and substance abuse resulting from his or her military service as a mitigating factor at sentencing. At the time of Simental's resentencing hearing, section 1170.91 did not apply to indeterminate sentences. (§ 1170.91, former subd. (a); *People v. Stewart* (2021) 66 Cal.App.5th 416, 423.)

not prohibit the court from considering "other sentencing issues, such as the striking of the gun [enhancements]." But he did not specifically refer to section 1385. He attached to his motion a decision from the Department of Veterans Affairs, which stated his PTSD "and major depressive disorder with alcohol use disorder, cannabis use disorder, cocaine use disorder and other stimulant use disorder (in remission)" was "directly related to [his] military service. [Citations.]"[6] While acknowledging the serious and violent nature of his crimes, he asserted the trial court should consider information about his character apart from his participation in the offenses; with his motion, he supplied numerous documents showing his accomplishments and commendations in prison.

At the resentencing hearing in June 2022, consistent with our directions in *Perez I*, the trial court considered the application of section 1170.91 to Simental. The prosecutor asserted section 1170.91 applied only to the counts with determinate terms, and the prosecutor requested the court impose the same sentence as before. The trial court found Simental was a member of the United States military and suffers from service-related illnesses. The court indicated it would consider these circumstances as mitigating factors for the counts with determinate sentences. Neither the trial court nor the parties addressed the recent amendments to section 1385 at the resentencing hearing.

The trial court imposed a life sentence for the kidnapping to commit robbery conviction (count 4) and 10 years for its firearm enhancement. As for the robbery conviction (count 5), the court imposed the low term of three years and 10 years for its firearm enhancement but stayed the punishment under section 654. On the remaining convictions, the court imposed low-term concurrent sentences and a 10-year firearm enhancement on each count: 16 months for making criminal threats (counts 7 &

---

[6] According to the documentation from the Department of Veterans Affairs, Simental joined the Marine Corps less than a month after the terrorist attacks on September 11, 2001 and served for four years before receiving an honorable discharge.

8) and two years for first degree residential burglary (count 9). Simental received a total sentence of life plus 10 years. He timely appealed.

## DISCUSSION

### I.

### THE MATTER MUST BE REMANDED FOR THE TRIAL COURT TO CONSIDER WHETHER TO EXERCISE ITS DISCRETION UNDER SECTION 1385

Simental contends the matter must be remanded for another resentencing hearing because the trial court did not apply recently amended section 1385 at his previous resentencing hearing. He asserts the trial court was required under the amended statute to dismiss all but one of his firearm enhancements and when the court was exercising its discretion as to the remaining enhancement, there was a rebuttable presumption in favor of its dismissal based on his mental illness. (§ 1385, subd. (c)(2)(B) & (D).) Simental's appellate argument is nuanced. He does not assert the trial court abused its discretion by making a discretionary sentencing choice and deciding not to dismiss the firearm enhancements. Instead, he argues the record shows the trial court did not exercise its discretion because the court was either unaware amended section 1385 applied at his resentencing or the court misunderstood the scope of its discretion under the amended statute.

As we explain, under amended section 1385, a trial court is obligated to consider certain factors when exercising its sentencing discretion—the furtherance of justice, the presence of mitigating circumstances, and danger to public safety. Neither the trial court nor the parties referenced section 1385 or these factors at Simental's resentencing. Based on the record before us, we are unable to presume the trial court performed the analysis required by amended section 1385. Therefore, we must vacate Simental's sentence and remand the matter for resentencing.

7

*A. Section 1385*

Under section 1385, a trial court may dismiss an action or sentence enhancement or strike the enhancement or its punishment "in furtherance of justice." (§ 1385, subds. (a) & (b).) Recognizing the requirement the court's action be """"in furtherance of justice"""" is an "'amorphous concept,'" the California Supreme Court has sought to elucidate general principles to guide a trial court in exercising its sentencing discretion. (*People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 530–531; *People v. Williams* (1998) 17 Cal.4th 148, 160–161.) Recently, the Legislature similarly sought to provide the trial courts with "clear guidance on . . . when" to dismiss sentencing enhancements or other allegations under section 1385 by specifying circumstances for courts to consider in their determinations. (Sen. Rules Com., Off. of Sen. Floor Analyses, Sen. Bill No. 81 (2021–2022 Reg. Sess.) as amended Aug. 30, 2021, p. 5.) "In October 2021[,] the Legislature passed and the Governor signed Senate Bill No. 81 (2021–2022 Reg. Sess.) (Senate Bill 81) (Stats. 2021, ch. 721, § 1), which, effective January 1, 2022, amended section 1385 . . . ." (*People v. Anderson* (2023) 88 Cal.App.5th 233, 238, review granted Apr. 19, 2023, S278786 (*Anderson*).)

Senate Bill 81 amended section 1385 by adding subdivision (c). (Stats. 2021, ch. 721; *People v. Mendoza* (2023) 88 Cal.App.5th 287, 295.) Section 1385, subdivision (c) states in part: "(1) Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute. [¶] (2) In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety. 'Endanger public

8

safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others."[7]

Simental argues two mitigating circumstances in the subparagraphs of section 1385, subdivision (c)(2), are present in his case. They are: 1) multiple enhancements were alleged (*id*., subd. (c)(2)(B)); and 2) the offense was connected to mental illness (*id.*, subd. (c)(2)(D)).

The multiple enhancements mitigating circumstance, section 1385, subdivision (c)(2)(B) states: "Multiple enhancements are alleged in a single case. In this instance, all enhancements beyond a single enhancement shall be dismissed." Simental asserts because multiple firearm enhancements were alleged, the trial court was required under section 1385, subdivision (c)(2)(B) to dismiss all but one enhancement if the court found dismissal would not endanger public safety or was in the interest of justice.

Simental contends after dismissing all but one firearm enhancement, the trial court was then required to consider his PTSD in deciding whether to dismiss the remaining enhancement. Under section 1385, subdivision (c)(2)(D), proof "[t]he current offense is connected to mental illness" is a mitigating circumstance. The statute defines mental illness as a mental disorder "identified in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders, including . . . post-traumatic stress disorder . . . ." (*Id.*, subd. (c)(5).) At his resentencing, Simental presented undisputed evidence he has PTSD and he argued his offenses were connected to his mental disorder. He asserts the court erred by failing to take his PTSD into account in deciding whether to strike or dismiss the firearm enhancements under amended section 1385.

_____

[7] Originally, when subdivision (c) was added to section 1385 (and at the time of Simental's resentencing), the mitigating circumstances in subparagraphs (A) through (I) were within subdivision (c)(3). (Stats. 2021, ch. 721, § 1.) This appeared to be a typographical error (see *People v. Sek* (2022) 74 Cal.App.5th 657, 674, fn. 7), and the mitigating circumstances were moved to subdivision (c)(2) effective June 30, 2022. (Stats. 2022, ch. 58, § 15.) We refer to the statute's current version.

*B. Cases Interpreting Amended Section 1385*

Several recent cases have interpreted the amendment to section 1385 under Senate Bill 81. One of the first to do so was *Walker, supra*, 86 Cal.App.5th 386, review granted, a case upon which Simental relies.[8] In *Walker*, the Court of Appeal concluded when there are multiple enhancements in a single case, a trial court is not required to dismiss all but one enhancement under section 1385, subdivision (c)(2)(B) *if* dismissal would endanger public safety. (*Walker*, at pp. 391, 396–398.) Other courts have reached the same or similar conclusion that a trial court is not required to dismiss an enhancement based on the mitigating circumstances in section 1385, subdivision (c)(2) if such dismissal would endanger public safety. (See *People v. Mendoza, supra*, 88 Cal.App.5th at pp. 295–297 [interpreting § 1385, subd. (c)(2)(C) and holding consideration of mitigating factors is not required if court finds dismissal would endanger public safety]; *Anderson, supra*, 88 Cal.App.5th at pp. 238–240, rev. granted [addressing § 1385, subd. (c)(2)(B) & (C) and concluding "a finding of danger to public safety can overcome the circumstances in favor of dismissal"]; *People v. Lipscomb* (2022) 87 Cal.App.5th 9, 17–19 [where court finds striking the enhancement would endanger public safety, court need not consider mitigating circumstance in § 1385, subd. (c)(2)(C)].)

In *Walker*, the Court of Appeal also addressed the interplay of the language in subdivisions (c)(1) and (c)(2) of section 1385. (*Walker, supra*, 86 Cal.App.5th at pp. 398–399, rev. granted.) Specifically, the court considered "what does it mean to 'greatly weigh' a mitigating circumstance in deciding whether to dismiss an enhancement[.]" (*Id.* at p. 391.) The *Walker* court concluded "section 1385's mandate to

---

[8] After Simental filed his appellate briefs, the California Supreme Court granted review in *Walker* on the following issue: "Does the amendment to Penal Code section 1385, subdivision (c) that requires trial courts to 'afford great weight' to enumerated mitigating circumstances (Stats. 2021, ch. 721) create a rebuttable presumption in favor of dismissing an enhancement unless the trial court finds dismissal would endanger public safety?" (*Walker*, S278309, Supreme Ct. Mins., Mar. 22, 2023, p. 338.)

'afford great weight' to mitigating circumstances erects a rebuttable presumption that obligates a court to dismiss the enhancement *unless* the court finds that dismissal of that enhancement—with the resultingly shorter sentence—would endanger public safety." (*Ibid.*, italics added.)

At least one appellate court has disagreed with *Walker*'s conclusion the mitigating circumstances in section 1385, subdivision (c)(2) create a rebuttable presumption in favor of dismissal of a sentencing enhancement unless the court finds dismissal would endanger public safety. In *People v. Ortiz* (2023) 87 Cal.App.5th 1087, review granted April 12, 2023, S278894 (*Ortiz*), the Court of Appeal declined to follow *Walker*'s reading of section 1385. (*Ortiz*, at p. 1098.) The *Ortiz* court explained "the ultimate question before the trial court remains whether it is in the furtherance of justice to dismiss an enhancement." (*Ibid*.) "Interpreting the statute, as the *Walker* court does [citation], to require the trial court to dismiss an enhancement absent a finding that dismissal would endanger public safety would divest the trial court of its ultimate discretion under the statute to determine what is in furtherance of justice, considering all relevant factors." (*Ibid*.) After reviewing the legislative history of Senate Bill 81, the *Ortiz* court concluded, "[t]he language of section 1385[, subdivision] (c)(2) as ultimately enacted also reflects a legislative recognition that a trial court's exercise of sentencing discretion involves more than a strictly binary weighing of mitigation against public safety." (*Ortiz*, at p. 1097.) Similarly, after reviewing the language in section 1385, subdivision (c)(1) and (c)(2), the Court of Appeal in *Anderson, supra*, 88 Cal.App.5th 233, concluded these subdivisions, when read together, establish "dismissal *shall* occur but only *if*, in exercising its discretion and giving great weight to certain factors, the court finds dismissal is in the interests of justice or would not endanger public safety." (*Anderson*, at p. 240.)

The California Supreme Court will ultimately decide the breadth of a trial court's discretion under amended section 1385, and it is not necessary for us to resolve

11

the issue here. But what we can take away from the plain language of section 1385 and the cases interpreting it is when one or more mitigating circumstances are present, the record should reflect the sentencing court was aware of its discretionary powers under the amended statute. (See *People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391 ["court which is unaware of the scope of its discretionary powers" cannot exercise "'informed discretion'"].)

*C. The Appellate Record is Ambiguous as to Whether the Trial Court Considered Dismissal of any Enhancements Under Amended Section 1385*

Here, despite the presence of two mitigating circumstances under section 1385, subdivision (c)(2), the trial court did not indicate it had analyzed whether dismissal of one or more of Simental's firearm enhancements would danger public safety or whether dismissal was in the furtherance of justice. On appeal, both parties agree amended section 1385 applied at the resentencing hearing, but they disagree as to whether the trial court considered the amended statute. Simental argues the trial court's imposition of the firearm enhancements in the absence of a finding their dismissal would endanger public safety evidences the court either did not understand the amended version of section 1385 applied at the resentencing hearing or did not understand the scope of its discretion under the amended statute. He requests we remand the matter to the trial court so it can exercise its discretion under the amended statute.

The Attorney General argues remand is unnecessary because we must presume the trial court knew and correctly applied statutory and case law at Simental's resentencing and error cannot be assumed from a "silent record." (*People v. Gutierrez* (2009) 174 Cal.App.4th 515, 527.) In response to the Attorney General's argument, Simental contends the record is not silent but instead affirmatively shows the trial court failed to apply section 1385 as amended.

The record of the resentencing hearing shows the trial court and the parties were focused on application of section 1170.91, based on the *Perez I* remittitur.  The parties did not address section 1385, despite the presence of two mitigating circumstances listed in section 1385, subdivision (c)(2).  In his sentencing brief, Simental presented evidence and argument his current offenses were connected to his PTSD.  While he argued this evidence was a mitigating factor under section 1170.91, he made no reference to section 1385.  At the resentencing hearing, the prosecutor focused on how section 1170.91 applied to the court's sentencing discretion on the substantive counts with determinate terms.  The prosecutor did not refer to section 1385 and did not argue dismissal of one or more of the firearm enhancements would endanger public safety.  The trial court found Simental suffered from PTSD but only took it into account as a mitigating factor under section 1170.91, specifically limiting its application to the determinate counts.  The trial court made no reference to section 1385.

Nothing in our record supports an inference the trial court realized the relevance of Simental's PTSD to its sentencing discretion under the newly amended section 1385 or that the court undertook any analysis section 1385 now requires.  Thus, "the record is at the very least ambiguous as to whether the court understood its obligation to consider" the mitigating circumstances identified in section 1385, subdivision (c)(2), before making the discretionary sentencing decision as to whether to dismiss or strike one or more of Simental's firearm enhancements.  (*People v. Ochoa* (2020) 53 Cal.App.5th 841 [addressing § 190.5, subd. (b)].)

We find *People v. Panozo* (2021) 59 Cal.App.5th 825 (*Panozo*) instructive.  In *Panozo*, the defendant filed a sentencing memorandum requesting the court grant him probation and claiming his military service-related PTSD "'partially led him to where he [was.]'" (*Id.* at p. 829.)  At sentencing, defendant's counsel argued his crimes were connected to his military service and warranted probation or imposition of a low-term sentence.  (*Id.* at pp. 837–838.)  However, defense counsel did not reference section

13

1170.9 or 1170.91 and did not suggest the court was obligated to consider the defendant's service-related PTSD as a mitigating factor under these statutes. (*Id.* at p. 838.) Nor did the prosecutor reference these statutes in the prosecution's sentencing brief. Instead, the prosecutor argued the defendant was presumptively ineligible for probation. (*Id.* at pp. 830, 838.) The trial court denied probation and imposed the middle term after finding the aggravating circumstances outweighed the mitigating ones. (*Id.* at p. 831.) The court's comments at sentencing did not reveal an awareness of its obligations under sections 1170.9 and 1170.91. (*Id.* at p. 838.)

In *Panozo*, the Court of Appeal found the record was, at a minimum, ambiguous as to whether the trial court was aware of its obligations under these statutes in exercising its sentencing discretion and therefore remand was required. (*Panozo, supra*, 59 Cal.App.5th at pp. 837, 840.) The trial court had been presented with uncontested evidence of the defendant's service-related PTSD, but the record did not show "the court appreciated it was *required* to consider his service-related PTSD as a mitigating factor" at sentencing. (*Id.* at p. 838.) Given the record before it, the Court of Appeal was unable to rely on the presumption the sentencing court had "acted in accordance with legitimate sentencing objectives [citations]." (*Id.* at p. 839.)

We are similarly constrained by our appellate record here. We recognize as an appellate court, "we presume that the trial court followed established law and thus properly exercised its discretion in sentencing a criminal defendant." (*People v. Weddington* (2016) 246 Cal.App.4th 468, 492.) But based on our record, we cannot rely on this presumption. Our appellate record is devoid of evidence the trial court considered public safety or furtherance of justice under recently amended section 1385. On this record, we cannot say it is clear the trial court recognized the new parameters on its discretion under subdivision (c) of section 1385 and declined to exercise its discretion to dismiss one or more of the firearm enhancements. "In the face of such an ambiguous record, it is appropriate to remand the matter to the trial court to consider the matter

under the correct standard, to the extent it has not already done so." (*People v. Lua* (2017) 10 Cal.App.5th 1004, 1021.)[9]


## II.

### THE AMENDED ABSTRACT OF JUDGMENT MUST BE CORRECTED

Simental contends the amended abstract of judgment for his indeterminate prison commitment erroneously states he was convicted in count 4 of "Kidnapping to commit robbery, rape, oral copulation" and must be corrected to reflect he was convicted of "kidnapping to commit robbery." The Attorney General does not object to correction of the amended abstract of judgment. We agree the amended abstract of judgment must be corrected to conform to the judgment.

We note this has been a reoccurring issue in this case. In *Perez I*, we directed the trial court to correct the same error in a codefendant's abstract of judgment. (*Perez I, supra*, G056047 at p. 56.) At resentencing, the trial court stated the abstracts of judgment for Simental and his co-defendants should reflect convictions for kidnapping to commit robbery and should not include the "'rape or oral copulation'" language. Despite the trial court's clear directives, the amended abstract of judgment still misstates the nature of Simental's conviction in count 4. We direct the trial court to correct the amended abstract of judgment for Simental's indeterminate prison commitment to describe his conviction in count 4 as "kidnapping to commit robbery." (See *People v. Mitchell* (2001) 26 Cal.4th 181, 185 [appellate court has inherent authority to order correction of abstract of judgment that does not accurately reflect the judgment]; *People v. Phung* (2018) 25 Cal.App.5th 741, 761 [ordering correction of defendant's abstract of judgment to accurately reflect his conviction].)

---

[9] We express no opinion as to how the trial court should exercise its discretion under amended section 1385.

In reviewing Simental's amended abstracts of judgment, we noted additional clerical errors that must be corrected. First, the trial court imposed the low term of three years on Simental's robbery conviction in count 5 and stayed this punishment under section 654. The amended abstract of judgment for Simental's determinate prison commitment inaccurately states the court imposed the upper term on this count. Thus, the amended abstract of judgment for Simental's determinate prison commitment must be corrected to reflect imposition of the *low* term on count 5.

Second, the record shows the trial court waived the $40 court operations assessment (§ 1465.8) and the $30 criminal conviction assessment (Gov. Code, § 70373) per convicted count. However, both the indeterminate and determinate abstracts of judgment state the court imposed these assessments. Therefore, the amended abstracts of judgment must be corrected to accurately reflect the court waived these assessments.

Thus, the trial court is directed to prepare amended abstracts of judgment reflecting: (1) Simental was convicted of kidnapping to commit robbery in count 4; (2) the low term was imposed on count 5; and (3) the court waived the $40 court operations assessment (§ 1465.8) and the $30 criminal conviction assessment (Gov. Code, § 70373). Given the several errors in the preparation of the abstracts of judgment, we request the trial court *personally* ensure the abstracts of judgment are amended to accurately reflect the judgment. (*People v. Acosta* (2002) 29 Cal.4th 105, 109, fn. 2.)

DISPOSITION

The matter is remanded for resentencing to allow the trial court to exercise its discretion under all relevant sentencing statutes, including amended section 1385. Upon resentencing Simental, the trial court is directed to prepare amended abstracts of judgment accurately reflecting the court's judgment. The trial court is further directed to

forward certified copies of the amended abstracts of judgment to the Department of Corrections and Rehabilitation.  In all other respects, the judgment is affirmed.


MOTOIKE, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


GOETHALS, J.

17